UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v

RAYMOND REID COLLINS JR.,

                Defendant.

Dkt. No. 19-CR-665 (AJN)

**<u>SENTENCING MEMORANDUM ON BEHALF OF RAYMOND REID COLLINS JR.</u>**

Edward J. Bilinkas
Law Offices of Edward J. Bilinkas
415 Route 10 East
Randolph, NJ 07869

*Attorney for Raymond Reid Collins Jr.*

## INTRODUCTION

Mr. Raymond Reid Collins Jr. is scheduled to be sentenced before Your Honor on May 18, 2020. On behalf of Mr. Collins, I submit this sentencing memorandum respectfully requesting, based upon the reasons outlined below, including an analysis of the 18 U.S.C. Section 3553(a) factors, that a sentence of time served is warranted. As you will recall, Mr. Collins was taken into custody at the time of his plea on November 25, 2019. At the time, Mr. Collins was in full compliance of his pre-trial release conditions, including he was testing negative for all controlled substances and was meeting weekly with a mental health counselor. At the time of his sentence, Mr. Collins will have already served approximately 6 months' imprisonment. Attached to this memorandum, please find a letter from Mr. Collins', character letters on behalf of Mr. Collins, and numerous doctors' reports outlining their expert opinions regarding Mr. Collins.

## PRELIMINARY STATEMENT

On November 25, 2019, Mr. Collins appeared before Your Honor, accepted responsibility and entered a guilty plea to Count One, Possession of Child Pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B), (b)(2) and 2. These charges stem from 3 months of conduct between August 2016 and October 2016. This offense carries a maximum term of imprisonment of 20 years imprisonment and a maximum term of supervised release of life, a mandatory minimum term of supervised release of 5 years, a maximum fine of $250,000, a $100 mandatory special assessment plus an additional assessment of $5,000. Restitution is mandatory and the amount will be determined by the Court.

The guilty plea was entered pursuant to a written plea agreement with the United States Attorney's Office, which contained sentencing guideline stipulations that are not binding upon the Court. The total offense level in the stipulations is a Level 28. This level is calculated based upon the following: a two-level increase because the material involved a prepubescent minor and a minor who had not attained the age of 12 years; a four-level increase because the offense involved material portraying sadistic or masochistic conduct or other depictions or violence, and sexual abuse or exploitation of an infant or toddler; a two-level increase because the offense involved the use of a computer or interactive computer service for the possession and accessing with the intent to view the material; a five-level increase because the offense involved 600 or more images; and a three-level reduction for accepting responsibility. Mr. Collins has never been convicted of any crimes. Accordingly, Mr. Collins' Criminal History Category is a level I.

Based upon the calculations set forth above, Mr. Collins' stipulated Guidelines range is 78 to 97 months' imprisonment. Additionally, after determining Mr. Collins' ability to pay, the Court may impose a fine of $25,000 to $250,000.

## SENTENCING CONSIDERATIONS

The Supreme Court concluded that courts must now treat the Sentencing Guidelines "as just one of a number of sentencing factors" together with the directives of 18 U.S.C. Section 3553(a). *See* United States v. Booker, 125 S. Ct 738 (2005) and United States v. Ranum, 353 F. Supp. 2d 984, 985 (E.D. Wisc. 2005).

In Booker, the Supreme Court found that a mandatory Guidelines regime was unconstitutional. 125 S. Ct. at 749-50. The Supreme Court's remedy was to make the

Guidelines advisory and to direct sentencing courts to consider them in addition to the other factors set forth in 18 U.S.C. Section 3553(a). Id. Courts will now generally follow a three-step sentencing process: (a) determine the applicable advisory Guidelines range, resolving the factual disputes in the pre-sentence report; (b) determine whether departures are applicable; and (c) determine the appropriate sentence in light of the factors set forth in18 U.S.C. Section 3553(a). United States v. Smith, 359 F. Supp. 2d 87 (W.D. Wisc. 2005).

As the Second Circuit has observed, "the Commission did not use [its typical] empirical approach in formulating the Guidelines for child pornography." United States v. Dorvee, 616 f.3d 174, 184-88 (2d Cir. 2010) (reversing a Guidelines range sentence as substantively unreasonable). With respect to U.S.S.G. § 2G2.2, the Guideline for offenses involving the possession of child pornography, the Dorvee court observed that the multiple enhancements under the Guideline "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases," Id. at 186, where the Guidelines can call for harsher sentences for low-level offenders who have viewed images of minors without physical contact than for defendants who engaged in the actual, physical sexual abuse of children, Id. at 187. As such, the Second Circuit counseled district courts to "take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 . . . bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." Id. at 188.

Furthermore, although these circumstances are not alleged in this instant case, the Second Circuit has even observed that the Guideline defects as described in Dorvee may

4

also extend to the Guideline covering child pornography production offenses, U.S.S.G. Section 2G2.1, which like the possession Guideline, can also produce indefensible sentencing ranges. For example, in United States v. Sawyer, the Second Circuit cited Dorvee in discussing the irrational sentence produced by the application of Section 2G2.1, a non-contact production offense, in which the defendant took explicit photographs of minors but was not found to have engaged in sexual contact with them. 672 F. App'x 63, 66-67, 66 n.3 (2d Cir. 2016) (summary order). The Second Circuit makes the inference that actually producing the child pornography is in some way more egregious than being in possession of the photographs after the fact.

Under Section 3553(a), "the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Those purposes are the following: "(A) to reflect the seriousness of the offense, to promote respect for the law and the provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. Section 3553(a)(2). In determining that sentence, this Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. Section 3553(a)(1), "the kinds of sentences available," Section 3553(a)(3), the Guidelines and Guidelines range, Section 3553(a)(4), the Guidelines' policy statements, Section 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," Section

5

3553(a)(6), and "the need to provide restitution to any victims of the offense," Section 3553(a)(7).

",The Supreme Court has acknowledged that the weight afforded to the Guidelines calculations is owed in part due to the empirical approach typically employed by the Sentencing Commission, which "fills an important institutional role: it has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." Kimbrough v. United States, 552 U.S. 85, 108-09 (2007). But by the same line of reasoning, the Guideline for a particular offense is entitled to very little weight when the Guideline "does not exemplify the Commission's exercise of its characteristic institutional role," that is, without reference to empirical data. Id. In these cases, a sentencing court may well conclude that a Guidelines sentence "yields a sentence greater than necessary to achieve Section 3553(a)'s purpose, even in a mine-run case." Id.

Given the illogical aspects of the child pornography Guidelines generally, many judges across the country have imposed substantially below-Guidelines sentences in cases governed by these Guidelines, including cases of probation, even when the Guidelines called for many years in prison. See United States v. R.V., 157 F.Supp. 3d 207, 264-65 (E.D.N.Y. 2016) (collecting cases where district courts have imposed, and circuit courts have affirmed, sentences with minimal or no incarceration for defendants sentenced under the child pornography possession Guideline). As for this district specifically, in appropriate cases – where, as here, the defendant is assessed to be a low risk for future crime and there are other mitigating factors – judges have not hesitated to reject substantial advisory Guideline ranges and impose noncustodial sentences. See

United States v. Aneglo Trinidad, No. 14 Cr 537 (NRB) (S.D.N.Y. June 23, 2015); United States v. Daniel Pinero, No. 14 Cr. 341 (AJN) (S.D.N.Y. April 1, 2015) (sentencing defendant to a non-incarceratory sentence despite a Guidelines range of 78-97 months); United States v. Patrick Colon, No. 12 Cr. 462 (VB) (S.D.N.Y. May 21, 2013); United States v. Christopher Ressa, No. 11 Cr. 939 (RPP) (S.D.N.Y. April 11, 2013) (imposing a sentence of time served, around three days, and supervised release, despite advisory range of 78-97 months); United States v. Robert Santana, No. 10 Cr. 341 (SHS) (S.D.N.Y. Jan. 28, 2011) (imposing a sentence of three years probation and six months community confinement, despite advisory range around five years); United States v. Leonardo Morel-Baca, No. 11 Cr. 427 (DAB) (S.D.N.Y. Oct. 2, 2012) (sentencing defendant with 78-97 months' Guidelines range to time served of one day and supervised release); United States v. Hector Garcia, 10 Cr. 914 (BSJ) (S.D.N.Y. Sept. 18, 2012); United States v. Marvin Falikovic, No. 07 Cr. 906 (NRB) (S.D.N.Y. Mar. 5, 2008); United States v. John Balkam, No. 05 Cr. 689 (DLC) (S.D.N.Y. Mar. 28, 2006).

## ARGUMENT

I.     SECTION 3553(a) FACTORS WARRANT A TIME SERVED SENTENCE.

The factors the Court must consider under 18 U.S.C. Section 3553(a) demonstrate that a continued custodial sentence is not warranted and would result in punishment greater than necessary to achieve the goals of sentencing. The relevant factors, as it pertains to defense's sentencing argument, are discussed below.

7

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Pursuant to 18 U.S.C. Section 3553(a)(1), the Court must consider the nature and circumstances of the offense during sentencing, and pursuant to 18 U.S.C. 3553(a)(2)(A), a sentence must reflect the seriousness of the offense. Mr. Collins' conduct, although illegal and wrong, was significantly less egregious than other cases involving child pornography. Mr. Collins was in possession of child pornography depicting minors and minors who have not yet attained the age of 12 years old. This is very serious conduct. However, Mr. Collins neither produced/aided in the production of the photographs nor did he distribute any of the photographs. Furthermore, Mr. Collins never contacted or attempted to make contact with any minors depicted in the photographs. Mr. Collins has accepted full responsibility for his actions, acknowledges his conduct was wrong and in no way minimizes the victimization of the individuals in the photographs. The defense, however, submits that producing child pornography, i.e. physically taking the photographs, has more of an involved nature to the child pornography than being in possession of the photographs. The Second Circuit has observed sentencing defects with regards to even those production offenses.

What is unique and distinguishes Mr. Collins from most, if not all, other defendants charged with similar offenses is the fact that this conduct was limited to a very short period of time, approximately 3 or 4 months. Moreover, Mr. Collins voluntarily stopped and sought counseling for the issues that motivated him to commit these serious crimes two years prior to any involvement of law enforcement. He also deleted all images from his devices and there were no relapses or illegal conduct after Mr. Collins sought treatment.

As to Mr. Collins' history and characteristics, he is 59 years old, has a bachelor's and master's degree and was previously employed by CNBC News. Mr. Collins has a wife and four children. His youngest daughter, Ellie, began experiencing extremely bad sinus issues when she was 13 years old. She was ultimately diagnosed with Wegner's granulomatosis, which is an incurable autoimmune condition that causes inflammation of the blood vessels. Since her diagnosis, Ellie has received medication intravenously on a monthly basis, which keeps the symptoms in remission. She also receives a yearly infusion of rituxan, which is used to treat autoimmune diseases. The medications used to treat this disease cost tens of thousands of dollars, without insurance, each year for the Collins family. Ellie still lives at home and needs to be constantly monitored. Mr. Collins and his wife are both an integral part of her support system. The strain it would place on Ellie if Mr. Collins was further incarcerated would be great and detrimental to her medically.

In 2010, Mr. Collins was diagnosed with Depression and Bipolar Disorder. From 2011 to 2019, he sought individual therapy for mental health and drug abuse issues. Additionally from June 2019 up to his incarceration in November 2019, Mr. Collins met with Dr. Singer regarding his psychosexual issues.

A Court must consider the "mental or emotional condition" of the defendant. Rita v. United States, 551 U.S. 338, 364-65 (2007). District Courts across the country have imposed lesser sentences outside the Sentencing Guidelines due to the defendant's mental condition. See United States v. Grinbergs, No. 8:05 Cr. 232, 2008 WL 4191145, at *9 (D. Neb. Sept 8, 2008) (imposing a sentence 75% below the Guideline range due in part to "the defendant's mental condition...[which] contributed to the offense," and his

9

"excellent progress in rehabilitation); United States v. Boyden, No. 06 Cr 20243, 2007 WL 1725402, at *1, *7-10 (E.D. Mich. June 14, 2007) (imposing a sentence of one day due, in part, to the defendant's success in therapy treating his "sexual addiction).

As described in detail below, various experts have determined that Mr. Collins' offense was born of mental illness and substance abuse, not maleficence. His astounding commitment to treatment and future wellness speaks to a core strength of his character and to the lack of risk he poses in the outside world. Mr. Collins has been getting treatment and therapy for Depression, Bipolar Disorder and substance abuse for years. More recently, once he recognized his issue with child pornography, he voluntarily sought treatment on his own. His mental conditions contributed to his conduct, which is the subject of this instant case, but he has been addressing it aggressively.

### A. Psychological Evaluations & Conclusions

After Mr. Collins' arrest, he voluntarily submitted himself to a psychosexual evaluation by Dr. Philip Witt on June 12, 2019. (*See Appendix A*). In addition to his interview of Mr. Collins, Dr. Witt utilized the Personality Assessment Inventory, Hare Psychopathy Checklist, Child Pornography Offender Risk Tool and the Sexual Violent Risk instrument in conducting his evaluation.

Based upon research and literature, Dr. Witt identifies numerous motivators, which help to understand the context in which this type of behavior occurs. The distinctions are important in recognizing that not all Internet offenders are the same and the risk to the community associated with each individual can vary considerably. The differing motivations include the following: (1) offenders who use child pornography as a part of a broader pattern of rule breaking, antisocial behavior; (2) offenders who are

10

sexually interested in children; (3) curious, hypersexual individuals; and (4) those who deal with child pornography for non-sexual reasons, such as financial gain.

After conducting all the tests mentioned above and considering the different motivations an individual can have, Dr. Witt concluded that there are no indications of a broadly antisocial lifestyle or of a callous, exploitive personality. He further concluded that there is no evidence that Mr. Collins' present Internet offense is preferentially pedophilic.

Regarding the hypersexuality motivator, Dr. Witt explains that some individuals who engage in online sexual misconduct are not so much motivated by the sexual interest in children as they are by curiosity, experimentation and/or an indiscriminate search for depictions of unusual or taboo sexual activity. The perceived anonymity and ubiquitous availability of the Internet can result in what is referred to in the literature as the "online disinhibition effect." Dr. Witt concluded that this type of curiosity and experimentation in the context of hypersexuality is the most plausible explanation for Mr. Collins' online misconduct. He noted that Mr. Collins' behavior was fueled by drug abuse. Additionally, Dr. Witt concluded that Mr. Collins' risk of committing a contact offense is quite low with a score of zero points out a possible seven points.

When considering all factors together, Dr. Witt found that Mr. Collins presents as a low-risk individual – particularly so given that his viewing of child pornography ceased entirely two years ago. Dr. Witt recommended Mr. Collins have sex offender specific psychotherapy and referred Mr. Collins to Dr. Skinner. Based on the fact that a psychiatrist is managing Mr. Collins' antidepressant and mood stabilizing medication, he is in substance abuse psychotherapy with a specialist and is in sex offender specific

psychotherapy with a specialist, Dr. Witt determined that, clinically, Mr. Collins presents as well within the limits of risk appropriate for outpatient management.

Following Dr. Witts recommendation, Mr. Collins voluntarily sought sex offender specific psychotherapy sessions with Dr. Jerry Singer on June 11, 2019. He engages in weekly individual outpatient treatment. Dr. Singer indicated that Mr. Collins has approached each session enthusiastically and exerts his best efforts into making the psychotherapy sessions productive. (*See Appendix B*). He concluded that Mr. Collins has not shown any clinical signs that he is in an acute psychiatric crisis. Mr. Collins expresses his remorse, guilt and shame for his conduct. He does not show any clinical signs of struggling with sexual deviance or of unusual sexual interests. The three-month period of offending started and ended on his own volition, which underscores that this episode was the result of substance abuse and other situational variables and is not indicative of sexually deviant predispositions. Currently, Mr. Collins shows no clinically significant impairment that would impede self-control. Dr. Singer indicates that from a risk management perspective, he has no concerns that Mr. Collins could not be managed on an outpatient basis and that he would welcome the chance to continue to treat Mr. Collins in the community.

In addition, prior to Mr. Collins' arrest on the instant offense, Mr. Collins had been receiving treatment from Dr. Pierce Skinner for substance abuse and mental health issues since March 2011 until present. (*See Appendix C*). Dr. Skinner has extensive knowledge of Mr. Collins' substance abuse with cocaine and Adderall as well as his Depression and Bipolar Disorder. He continues to address these issues with Mr. Collins both before and after Mr. Collins viewed child pornography. As previously stated, the

period of time for which he was in possession of child pornography was between August 2016 and October 2016. Nothing before. Nothing after. Mr. Collins realized his wrongful behavior and stopped on his own. He stopped viewing photographs of minors voluntarily and deleted the images off of his devices.

Dr. Skinner's opinion is that Mr. Collins is not a danger to others and does not present a threat to others even during the period of time he was addicted to psychostimulants. He does not perceive Mr. Collins as a pedophile. His use of child pornography was episodic, i.e. a single three month episode, and there is not characteristic of a paraphilia, but rather, as a misguided exploration during a manic episode fueled by Adderall amplified hypersexuality. Dr. Skinner's opinion is that this experience of Mr. Collins' arrest and exposure has been so significant to him that he will be intrinsically motivated to maintain abstinence from psychostimulants, and to manage his bipolar disorder far more carefully. He recommends continued weekly attendance of psychotherapy, regular attendance at AA meetings and regular drug testing to reinforce mindfulness and self-monitoring of his psychological issues.

Finally, after Mr. Collins' guilty plea, the probation officer suggested an additional psychosexual evaluation by a court-appointed expert. Mr. Collins agreed and was evaluated by Dr. Jennifer McCarthy in January and February 2020. (*See Appendix D*). By Mr. Collins agreeing to that evaluation, he voluntarily agreed to delay his sentence for several months to allow the court to have an independent evaluation. Thus extending his incarceration time even though defense's position was to request a time served sentenced.

The report sets forth the trials and tribulations that Mr. Collins has been through during his life: alcoholic parents, personally suffering from mental/emotional disabilities, substance abuse along with inpatient and outpatient treatment, and difficult marriage issues. Dr. McCarthy found that all those issues contributed to the conduct for which is the subject of this criminal matter at hand.

The evaluation also discusses that since 2005, Mr. Collins had been prescribed, on and off, psychotropic medication. (See letter from Dr. Clifford Taylor, attached in Appendix DD). In 2005, Mr. Collins stopped taking his psychotropic medication and began heavily using Adderall. He indicated the effects of Adderall led to a "bizarre hypersexual world." He began seeking sexual gratification via adult pornography, massage parlors, strip clubs and adult female escorts. His drug abuse was at its peak during the time of this offense. He indicated to Dr. McCarthy that when he first saw child pornography, he was not shocked and that nothing really shocked him during that time due to him "being so out of his state of mind" and "his two year drug binge."

He acknowledged to Dr. McCarthy that his offending behavior was impulsive, and that he exercised bad judgment and poor decisions while taking amphetamines. Mr. Collins went through a period of time where he wasn't himself. He was abusing drugs, acting out sexually, completely out of his mind so much that his wife believed he had dementia. He is very remorseful and ashamed of his behavior during those dark times. Mr. Collins has been sober for almost 3 years now.

Dr. McCarthy also conducted numerous psychosexual examinations on Mr. Collins. She concluded that his involvement in this instant offense is best perceived in the context of situational factors rather than stemming from a predisposition to engage in

14

sexually deviant behavior. Defense submits those situational factors include, but are not limited to, mental health issues, being off his psychotropic medications and relying solely on illicit drugs instead. Dr. McCarthy concluded that Mr. Collins does not present with abusive supportive schemas and instead appears to appreciate the consequences of child sexual abuse on victims. Her expert opinion was that Mr. Collins impresses as low risk for re-offense if he remains compliant with his psychotropic medication, actively participates in sex offender treatment and maintains sobriety.

These evaluations and opinions offered by both defense and court-appointed experts are all consistent with each other and all confirm the fact that Mr. Collins is truly remorseful, not a danger, and is a low-risk to reoffend if he remains compliant with treatment. As opposed to many defendants who come to sentencing with no record of success addressing their various issues, Mr. Collins not only took proactive steps to address his issues prior to law enforcement's involvement, but was clearly successful as he has remained drug and offense free for more than two years.

As repeatedly observed by other courts, reduced risk to reoffend is an important sentencing factor in cases of this kind. *See* Grinbergs, 2008 WL 4191145, at *9 (D. Neb. Sept. 8, 2008); Boyden, 2007 WL 1725402, at *1, *7-10 (E.D. Mich. June 14, 2007).

### B. Character Letters

Attached are numerous letters from Mr. Collins, his family, friends and people in the community who are attesting to Mr. Collins' good character. (*See Appendix E*). Mr. Collins has been married for almost 30 years and has four children, all whom he is very close with. His wife is 100% supportive and believes that her husband is a changed man and worthy of the Court's compassion. Some of the letters are from his children who are

aware of his past addiction issues as well as his current situation. Despite these side steps in his life, he is still praised by his children. His children remember what a good, hardworking, and loving man he is. The letters convey that he was generous and kind not only to his family, but also to his community. He is further described as loyal, kind-hearted, supportive and one who has a gentle spirit. Everyone indicates how shocked they were to learn of this instant offense.

It is clear that this instance was an aberration on the character of Mr. Collins. Something unlike anything he has ever and will ever do again. The character letters are evident that Mr. Collins has been a pillar of support in his family and in the community. I submit that the conclusions and recommendations conveyed in the doctors' reports confirm and corroborate that Mr. Collins will continue to be a productive member in his community if he continues seeking the specified treatment(s).

### C. Defendant's Pre-Sentence Report

U.S. Probation Officer Ashley Geiser completed a detailed 37 page pre-sentence report for Mr. Collins. She thoroughly documented his family history, medical, emotional, and mental history, and the facts of this instant case. As a U.S. Probation Officer, she is very familiar with the various statutes and Sentencing Guidelines. After a complete evaluation of all the factors and circumstances surrounding this case, USPO Geiser recommended to this Court that a sentence of 24 months' imprisonment (far below 78-97 months) is sufficient and appropriate for Mr. Collins. Even she was convinced that based upon all the factors, a sentence of 78-97 months' imprisonment was not appropriate for Mr. Collins.

> **2. The Need for the Sentence Imposed: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

18 U.S.C. Section 3553(a) requires that the Court impose a sentence "sufficient, but not greater than necessary," to "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. Section 3553(a)(2)(A)-(C). Based on the nature of the offense conduct, a sentence of incarceration is not necessary to satisfy these goals.

Possession of child pornography is a serious offense for which this conduct needs to be deterred. Mr. Collins has already been deterred and is being punished for his conduct. In light of his arrest, Mr. Collins lost his high-paying job working for CNBC news, which was a career he worked his entire life to achieve. Mr. Collins has been shamed in his community and will have to register as a Sex Offender. That stigma will stay with him forever. Additionally, he has already served approximately 6 months in custody. That time was spent at both the Metropolitan Correction Center and Westchester County Corrections. He has incurred no infractions during that time and has participated in an informal bible study on a daily basis.

Additionally, a large portion of his time was spent during the COVID-19 pandemic. Mr. Collins, as noted in the presentence report, is 59 years old and has severe asthma, which is a recognized underlying condition and has imposed a much greater burden on him during his incarceration at these facilities. As a further example of his

17

acceptance of responsibility, he chose not to file a motion for pre-sentence release based on his documented underlying condition and COVID-19.

This instance occurred over two years prior to his arrest. Mr. Collins stopped and deleted all images at that time. The items in question were retrieved from the Cloud, not from Mr. Collins' personal devices. Nothing was found prior to or after that time. He did not wait to get caught before stopping this behavior, but did it on his own. The conduct charged was August to October 2016. A search warrant was executed on Mr. Collins' home on May 2, 2019, long after he had ceased possessing and/or viewing child pornography.

Additionally, Mr. Collins sought treatment for his substance abuse as well as sex offender specific treatment prior to being sentenced. He sought help for himself on his own. The doctors who evaluated Mr. Collins concluded that he is a low risk to commit a subsequent contact offense and not a threat to the public. All doctors recommend continued specific psychotherapy as well as continuing to stay on specific medications. The psychotherapy treatment he has been receiving is imperative to ensure that he continues down this positive path. He has been receiving these treatments from doctors who know Mr. Collins, know his history, who have helped him progress. To interrupt that treatment with a term of imprisonment and have him obtain treatment from someone who knows nothing about Mr. Collins or his history would not serve the best and most effective interests of Mr. Collins. Mr. Collins is extremely committed to keeping his life on track and to continue the treatment he has been working so hard on. The treatment available to Mr. Collins from the Bureau of Prisons would not address his specific needs nor would it be as intensive and focused on his mental health and addiction issues.

This felony conviction will obviously be a huge obstacle for Mr. Collins regarding employment and any other future endeavors. Additionally, he will be required to register as a Sex Offender, which will provide Mr. Collins with its own inherent hurdles as he goes through life.

Given all of these factors, a sentence of time served with special conditions of supervised release, including continued treatment of the kind recommended by Dr. McCarthy, Dr. Singer, Dr. Witt and Dr. Skinner, and community service, would be sufficient, but not greater than necessary to accomplish the goals of sentencing, without disrupting the remarkable progress Mr. Collins has made in addressing his issues.

A felony conviction, being a registered Sex Offender and a lengthy period of supervised release will provide general and specific deterrence while still allowing Mr. Collins to continue his productive course of treatment.

## **CONCLUSION**

Mr. Collins appears before Your Honor having accepted responsibility and pleading guilty to one count of Possession of Child Pornography. Defense submits that punishment needs to be imposed, but the sentence should take into consideration the factors above, Mr. Collins' mental, emotional and medical history, and the amazing progress Mr. Collins has made during his treatment even before the Government's investigation began.

Mr. Collins has a strong support system both at home and with numerous doctors who are eager to help him continue to progress. He is determined to be a dedicated and successful member of his family as well as with his community.

For all the reasons stated above, we are respectfully requesting Your Honor to show leniency on Mr. Collins and sentence him to time served with supervised released, including any conditions and restitution the Court deems appropriate.

Dated: April 30, 2020         By: _____
                                                Edward J. Bilinkas, Esq.
                                          Law Offices of Edward J Bilinkas
                                                         415 Route 10 East
                                                            Randolph, NJ 07869
                                                                 (973) 361-1212

*Attorney for Raymond Reid Collins Jr.*